UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DESIGN BASICS, LLC,
PRIME DESIGNS, INC.,
PLAN PROS, INC.,

        Plaintiffs,

  v.                                                Case No. 14-CV-1102

LEXINGTON HOMES, INC.,
TEAM STIMPSON LLC,
TAILWIND CROSSINGS, LLC,
PONDS OF MENASHA, LLC,
FIELDSTONE INVESTMENTS, LLC,
CENTENNIAL CENTRE, LLC,
JEFFREY T. MARLOW,
MICHELLE L. STIMPSON,

        Defendants.

ACUITY A MUTUAL INSURANCE COMPANY,

        Intervenor Defendant.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      This copyright infringement case is before the Court on several motions for summary judgment and partial summary judgment, including Plaintiffs' and Defendants' cross-motions on the issue of whether Defendants had any opportunity to access the copyrighted works before creating allegedly infringing works. Although Plaintiffs have produced evidence that Defendants had access to other works copyrighted by Plaintiffs, Plaintiffs have failed to produce any evidence whatsoever that Defendants had access to the four works actually at issue in this case. I therefore conclude that Plaintiffs have failed to raise a genuine issue for trial as to an essential element of their claim.

Accordingly, summary judgment will be entered in favor of Defendants and the case will be dismissed.

**BACKGROUND**

Plaintiffs Design Basics LLC, Prime Designs Inc., and Plan Pros Inc. are Nebraska companies engaged in the business of creating, publishing, and licensing architectural plans and designs. Defendants are Wisconsin companies and their principals engaged in the business of real estate development and the building of residential homes and multi-family apartment buildings. Specifically, Lexington Homes Inc. builds homes; Jeffrey Marlow, Michelle Stimpson, and now-dismissed Greg Wells are owners of Lexington Homes; Tailwind Crossings LLC, Ponds of Menasha LLC, Fieldstone Investments LLC, and Centennial Centre LLC were each created for the purpose of purchasing unimproved land to be sold to Lexington for development; and Team Stimpson LLC, a subsidiary of Lexington Homes, acts as the real estate agent for the homes.

Plaintiffs allege that on September 11, 2011, they became aware that Defendants were infringing copyrights held by Plaintiffs for three residential homes plans. Plaintiffs also claim they discovered infringement of a fourth plan after commencing this action on September 10, 2014. In particular, Plaintiffs assert that Lexington Homes' "Carlise" home plan infringes Plaintiff Design Basics LLC's "Aspen" plan; Lexington's "Ashwood" plan infringes Plaintiff Prime Design Inc.'s "Taylor" plan; Lexington's "Easton" plan infringes Plaintiff Plan Pros Inc.'s "Womack" plan; and Lexington's "Oakridge" plan infringes Plaintiff Design Basics LLC's "Kendrick" plan. Each of the Plaintiffs' plans was registered with the U.S. Copyright Office; the Aspen was registered January 13, 1994, the Kendrick was registered September 6, 2001, the Taylor was registered January 18, 2006,

and the Womack was registered February 9, 2007.[1]

Plaintiffs' complaint asserts alternative claims of willful and non-willful copyright infringement under the Copyright Act, 17 U.S.C. § 106(1), and a claim that Defendants removed Plaintiffs' copyright management information from copies of Plaintiffs' works in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202. In addition to alternative demands for actual and statutory damages, Plaintiffs seek to disgorge profits attributable to Defendants' alleged infringements. Through discovery, the parties have learned Defendants built and sold 50 homes using the four accused plans. Pls.' Resp. to Defs.' Proposed Undisputed Facts (PUF), ¶ 117, ECF No. 78.

Among other defenses, Defendants assert they independently created the accused plans. Answer & Aff. Defenses, Aff. Defense No. 10, ECF No. 16. Shane DuPuis, a designer and residential drafter employed by Lexington, testified that he first drew all of the accused plans for Lexington in 2009 and 2010, and that the plans were created by him in collaboration with Defendants Jeffrey Marlow and Michelle Stimpson. Pls.' PUF in Supp. of Resp. to Defs.' Mot. for Summ. J., ¶ 11, ECF No. 79; DuPuis Dep. Tr. at 38–39, ECF No. 81-1. DuPuis, Marlow, and Stimpson each submitted declarations stating they had not seen Plaintiffs' plans prior to the time this lawsuit was filed in 2014. Defs.' PUF, ¶ 95, ECF No. 57.

Plaintiffs dispute that Defendants and DuPuis had not seen Plaintiffs' works prior to this lawsuit on the basis that Plaintiffs "regularly and systematically" mailed plan catalogs and other

---

[1] The registration certificates are in the record at ECF Nos. 50-1, 50-2, 51-1, & 52-1. For comparison purposes, Plaintiffs' plans are attached to the Declaration of Frank Kowalkowski as Exhibits P through S at ECF Nos. 59-16 through 59-19, and Lexington's plans are attached to the Declaration of Jeffrey Marlow as Exhibits E through H at ECF No. 60-1, pp. 9–18.

3

publications to members of the National Association of Home Builders, including the Brown County Home Builders Association, of which Plaintiffs claim Defendants were members from 2000 to 2013. Additionally, discovery has revealed that Defendants possessed several home plan catalogs that contained dozens of Plaintiffs' copyrighted works, including one catalog containing a Design Basics LLC plan on a page that had been specifically "dog-eared." Plaintiffs also assert that Mr. DuPuis had access to Plaintiffs' works during his former employment with Hoida Lumber, a national lumberyard with a "long customer order history" of plan catalogs from Plaintiffs. Pls.' Resp. to Defs.' PUF, ¶ 95.

Plaintiffs also state that beginning in the early 1980s Design Basics LLC's predecessor, Design Basics Inc., was the largest publisher of home plan catalogs in the United States. Before the Internet age, Plaintiffs claim Design Basics Inc. widely disseminated its works through no-cost, magazine-style promotional mailers in which its copyrighted works were marketed. Pls.' PUF in Supp. of Resp. to Defs.' Mot. for Summ. J., ¶ 3. Since 1996, Plaintiffs state that Design Basics Inc. has also maintained a well-known website, www.designbasics.com, where Design Basics Inc. and its affiliates like Plaintiffs Prime Designs Inc. and Plan Pros Inc. advertise and market all of their copyrighted works through publishing designs in a user-friendly and easily-accessible online storefront. *Id.* ¶ 5. Through the use of this website since the advent of the Internet, Plaintiffs claim their plans are now "ubiquitous in the marketplace." *Id.* ¶ 7.

Despite the foregoing evidence suggesting Defendants had access to Plaintiffs' works in general, however, there is no evidence that Defendants had access to the four works at issue in this case. In response to written discovery in which Defendants requested evidence of access to these works, Plaintiffs produced five plan books, four of which included the Aspen and one of which

4

included the Taylor. Defs.' PUF, ¶¶ 81–82. There is no evidence that Plaintiffs' other two plans—the Womack and Kendrick—were distributed to anyone. Plaintiffs have also produced no evidence of purchase orders, sales receipts, or other documents showing any books, including the five containing the Aspen and Taylor, were sent to Defendants. *Id.* ¶¶ 67–70. Plaintiffs' representatives who have been deposed in this case were likewise unable to state any reason to believe that Defendants received Plaintiffs' plans, despite the fact that checking customer history and mailing lists is a regular part of Plaintiffs' business practices. *Id.* ¶¶ 67–70, 76–77.

Defendants admit that they possessed four plans books in their office which had been distributed to them by various marketing companies and which contained numerous plans from several design companies. They admit two of these books contained plans created by Design Basics, including the book containing a Design Basics plan that had been specifically marked. But none of these books contained the plans Defendants are accused of infringing. *Id.* ¶ 100.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's

5

case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.,* 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

A claim of copyright infringement requires showing (1) ownership of a valid copyright and (2) unauthorized copying of constituent elements of the work that are original. *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013). "Proof of copying is crucial to any claim of copyright infringement because no matter how similar the two works may be (even to the point of identical), if the defendant did not copy the accused work, there is no infringement." *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984) (citation omitted). "However, because direct evidence of copying is rarely available, the plaintiff can rely upon circumstantial evidence to prove this essential element, and the most important component of this sort of circumstantial evidence is proof of access." *Id.* (citing 3 Nimmer, *Copyright* § 13.02 at 13–19 (1983)) (emphasis added); *see also Peters v. West*, 692 F.3d 629, 635 (7th Cir. 2012) ("[E]vidence of access is required because independent creation is a defense to copyright infringement, and so a plaintiff must show that the defendant had an opportunity to copy her original work.").

Direct evidence of access includes evidence that the copyrighted work was sent directly to the defendant or a close associate of the defendant. There is no such evidence in this case. Access may also be inferred where the similarity of the copyrighted and accused works is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Selle*, 741 F.2d at 901. In an exceptional case, such "striking similarity" alone may establish access. For example, "It is in order to avoid having to prove access that mapmakers will sometimes include a fictitious geographical feature in their maps; if that feature (what is called

6

in the trade a 'copyright trap') is duplicated in someone else's map, the inference of copying is compelling." *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 926 (7th Cir. 2003). Likewise in *Bucklew* the copying of a business form was established by evidence of similarity and without evidence of access:

> Bucklew's version contains an arbitrary pattern of boldfacing of cells; HAB's duplicates it exactly. Bucklew's form also contains an 'output range,' an intermediate table that he carried over from a previous spreadsheet program but that has no function in his current program—or in HAB's. Had HAB written its program from scratch, it would have had no reason to include an output range—yet it did. And in another intermediate table, one that contains the identical data as the form 52566 itself (the starting point for the transformation), HAB's version uses the identical headings as Bucklew's corresponding intermediate table, rather than the headings in the form 52566 with which HAB had begun. . . . And HAB's program like Bucklew's used a font (Swiss font) that was not available in the version of the Windows operating system that HAB used to develop its software. This is further evidence that rather than creating its own form using the software available to it on Windows, HAB had copied Bucklew's form.

*Id.* at 927. But such cases are unusual. As the Seventh Circuit noted in *Selle*, "although it has frequently been written that striking similarity <u>alone</u> can establish access, the decided cases suggest that this circumstance would be most unusual. The plaintiff must always present sufficient evidence to support a reasonable possibility of access because the jury cannot draw an inference of access based upon speculation and conjecture alone." 741 F.2d at 901.

This is not one of the unusual cases in which similarity alone establishes access. Plaintiffs have not identified any "copyright trap" or other unique or arbitrary feature the presence of which in the accused plans cannot be innocently explained. Plaintiffs suggest the plans "are substantially similar because the overall flow and location of rooms, hallways, bathrooms, access points and closets are substantially similar in both Plaintiffs' and Defendants' respective plans." Pls.' PUF in Supp. of Resp. to Defs.' Mot. for Summ. J., ¶ 22 (citing declaration of Carl Cuozzo, a Senior

7

Designer at Plaintiff Design Basics LLC). But as Defendants point out, the evidence is undisputed that significant differences also exist. See Aug. 2015 Report of Robert Greenstreet, Appx. B, Ex. H to Kowalkowski Dec. at 72–95, ECF No. 59-8. Moreover, common sense dictates that there are only so many ways the rooms in a house can be configured, and even less ways that will achieve an "overall flow" of kitchen, living room, bathrooms, and bedrooms that will appeal to the average customer. *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2d Cir. 2014) ("There are only so many ways to arrange four bedrooms upstairs and a kitchen, dining room, living room, and study downstairs."); *see also Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, 825 F.3d 1314, 1324 (11th Cir. 2016) (holding that there is no copyright infringement where floor plans are similar only with respect to their noncopyrightable elements).

Professor Robert Greenstreet, Dean of the School of Architecture and Urban Planning at the University of Wisconsin-Milwaukee and an expert witness retained by Defendants in this case, described the copyrighted works at issue as follows: "The layouts of each model contain a conventional array of rooms and spaces, predictably arranged and consistent with housing alternatives seen in housing markets across the country for many years. The 'style' of the models reviewed, most of which Design Basics prominently advertises as 'traditional' are consistent with the understanding that word implies. This confirms the conclusion that they are in keeping with the long standing style or custom and are congruent with long-established standards and conventions of house design in both plan and appearance." Ex. H to Kowalkowski Dec. at 14, ECF No. 59-8. Although it is true that there are also similarities between Plaintiffs' plans and the accused plans, given Plaintiffs' failure to point out anything particularly unique about their plans, the similarities fall far short of precluding any innocent explanation. *See Guzman v. Hacienda Records & Recording*

8

*Studio, Inc.*, 808 F.3d 1031 (5th Cir. 2015) (nearly identical lyrics were not "strikingly similar" where songs at issue were relatively short and tended to build on or repeat a basic theme).

Without "striking similarity," the case law is clear that Plaintiffs must present other kinds of evidence of access. Here, as noted above, Plaintiffs have produced evidence purporting to show that their works are "ubiquitous in the marketplace." A plaintiff "may be able to establish a reasonable possibility of access when, for example, the complaining work has been widely disseminated to the public." *Selle*, 741 F.2d at 901 (citing *Abkco Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983) (copyrighted song was number one on *Billboard* charts for five weeks in United States and one of "Top Thirty Hits" in England for seven weeks in the year of alleged access)). Evidence that only creates a "bare possibility" that the defendant had access, however, is never enough. *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996).

In this case, as noted above, none of Plaintiffs' evidence of access pertains to the works Defendants are accused of copying. That Defendants knew who Plaintiffs were or even that Defendants had access to Plaintiffs' plans other than those at issue in this case is undisputed; but Plaintiffs have not cited and the Court is not aware of any case holding that a defendant's knowledge that a plaintiff has copyrighted works or a defendant's access to a plaintiff's other copyrighted works can raise an inference that the defendant had access to the copyrighted works his works are accused of copying. Indeed, to allow a plaintiff to argue access to the work at issue based only on evidence relating to other works would be to do away with the access element altogether or invite the jury to infer that the defendant had access to the work at issue without any evidentiary basis for doing so. "[T]he jury cannot draw an inference of access based upon speculation and conjecture alone." *Selle*, 741 F.2d at 901. Accordingly, Defendants' motion for summary judgment on the issue of access

9

must be granted.

Without evidence of access to the copyrighted works, there is also no genuine dispute of material fact as to whether Defendants intentionally removed copyright management information from the same copyrights as required for the Plaintiffs to prove their claim under the Digital Copyright Millennium Act. *Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, 827 F. Supp. 2d 607, 625 (E.D. Va. 2011) ("[S]tanding alone, the fact that there are some similarities between the two sets of plans is simply insufficient to support a claim under 17 U.S.C. § 1202(b)."), *vacated on other grounds*, 496 Fed. Appx. 314 (4th Cir. 2012). It thus follows from the Court's conclusion on the infringement claims that Defendants are entitled to judgment on their claims under the Digital Copyright Millennium Act.

## CONCLUSION

For the reasons above, Plaintiffs' motion for partial summary judgment on the issue of access is **DENIED** and Defendants' motion for summary judgment is **GRANTED**.

All other pending motions are **DENIED AS MOOT**, except that the motions to seal are **GRANTED**.

The Clerk of Court is directed to enter judgment against Plaintiffs and in favor of Defendants dismissing the case.

**SO ORDERED** this  29th  day of September, 2016.

                                          s/ William C. Griesbach
                                          William C. Griesbach, Chief Judge
                                          United States District Court